UNITED STATES of America,
Appellant,

v.

Jesse A. S. LEWIS et al., 339.23 Acres of
Land in Tulare County, California,
Appellees.

UNITED STATES of America,
Appellant,

v.

Clemmie GILL et al., and 3,065.94 Acres
of Land, More or Less, in Tulare
County, California, Appellees.

UNITED STATES of America,
Appellant,

v.

A. R. BENNING et al., and 1,142.50 Acres
of Land, More or Less, in Ventura
County, California, Appellees.

UNITED STATES of America,
Appellant,

v.

Jack T. MORRISON, etc., et al., and 309.56
Acres of Land, More or Less, in Ven-
tura County, California, Appellees.

UNITED STATES of America,
Appellant,

v.

V–R RANCH COMPANY, a corporation,
et al., Appellees.

Nos. 17437, 17452, 17394, 17395, 17501.

United States Court of Appeals
Ninth Circuit.

July 10, 1962.

See also 295 F.2d 705.

Ramsey Clark, Asst. Atty. Gen., Lands Div., Washington, D. C., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., Albert Minton and Richard J. Dauber, Asst. U. S. Attys., Los Angeles, Cal., for appellant the United States in No. 17437.

Ramsey Clark, Asst. Atty. Gen., Lands Div., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., Albert Minton and John B. Read, Asst. U. S. Attys., Los Angeles, Cal., for appellant United States in Nos. 17394, 17395.

Ramsey Clark, Asst. Atty. Gen., Lands Div., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., Albert Minton and John B. Read, U. S. Attys., Los Angeles, Cal., S. Billingsly Hill, Dept. of Justice, Washington, D. C., for appellant United States in No. 17501.

Maddox, Abercrombie, Kloster & Jacobus, and Frederic A. Jacobus, Visalia, Cal., for appellees Lewis and others.

Burford, Hubler & Burford, and Burke E. Burford, Porterville, Cal., for appellees Gill and others.

Angell, Adams, Gochnauer & Elder, and Philip H. Angell, San Francisco, Cal., and Louis LeBaron, Honolulu, Hawaii, Price, Postel & Parma, and Robert M. Jones, Santa Barbara, Cal., and Mose Silverman, San Francisco, Cal., for the appellees Benning, Morrison & Battin.

Anson, Gleaves & Larson, and John B. Anson, and Milnor Gleaves, Los Angeles, Cal., for the appellee V-R Ranch Co.

Before HAMLEY, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

In these five separate condemnation cases appeals taken by the United States raise substantially identical points. All cases were filed in the district court for the Southern District of California, Central Division, and before the same district judge. In each case the issue of just compensation was referred to a commission appointed pursuant to Rule 71A (h).[1] In each case the same district judge reviewed the commission's report.

The United States in each appeal claims that the report of the commission is inadequate and that this inadequacy has rendered it impossible for the district court properly to review the commission's award and, in particular, to ascertain whether or not the commission was clearly erroneous in its resolution of factual disputes.

It is apparent that the foundation of the government's grievances in all cases is a basic difference between the government and the district court as to the nature of a commission's report and findings and as to the requisites of form and substance which must be met.

Thus the government relies on the statement of Judge Parker in United States v. Cunningham, 4 Cir., 1957, 246 F.2d 330, 333:

"The justification of the appointment is the variety and complexity of the matters to be considered on the question of valuation and the importance of having these adequately set forth in a report so that they may be subjected to the scrutiny of the District Court and of this court upon review and the proper principles of valuation applied to them. Any adequate review of the facts or of the legal principles followed in basing valuations on the facts is defeated if a report by the commission is of such a character that it amounts to no more than a general verdict by a jury. The verdict of a jury of twelve men may reasonably be dispensed with if commissioners make a report which furnishes an adequate basis of review by the trial judge and the appellate court, but not if the report furnishes no such basis. Just as a judge in a trial without a jury is required to make adequate findings so that his conclusions may be reviewed by the appellate court so a master, in an action to be tried without a jury, is required to make findings of fact so that his conclusions may be adequately reviewed by the trial judge, who is required to accept them 'unless clearly erroneous' (Rule 53(e) (2)), and this practice with respect to the report of a master is prescribed by Rule 71A(h) with respect to the reports of commissioners in condemnation proceedings."

The district court took a different view. Thus in the Gill case, in its order

---

1. "Trial. If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of jus-tice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court." 28 U.S.C.A.

approving the commission's report, it states that findings "may be as general as the verdict of a jury and have the same effect," and further, "I see no reason for applying a different rule to the report of 71A(h) commissioners," and later, "Thus I do not agree with United States v. Cunningham * * * [and other cases] so heavily relied upon by the government insofar as they deal with the form and content of the commissioner's report."

■ Upon this basic difference we agree with the principles expressed in Cunningham. The district judge is not sitting as the presiding judge in a jury-tried case, but as a reviewing court. He has not heard the evidence nor supervised its admission and thus is in no position to view the commission's report simply as a jury verdict. If the court is intelligently to perform a function of review, it must be able to ascertain whether, in arriving at its value judgment, error was committed by the commission, either in the resolution of factual disputes or in the application of principles of valuation. There must be a sufficient disclosure to the reviewing court to enable it to understand what it is that has been decided. As stated by Mr. Justice Cardozo in United States v. Chicago, M., St. P. & P. Railroad, 1935, 294 U.S. 499, 510–511, 55 S.Ct. 462, 79 L.Ed. 1023:

"We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

There must at least be resolution of factual disputes as to the character of the property, its highest and best use and the elements which contribute to its value; and disputes as to applicable principles of valuation.

The district court was then in error as to the proper nature of a commission's report and findings and as to the function of the district court in review. The question remains as to the effect of this error on the particular cases before us.

■ The United States appears to urge upon us a sort of supervisory func-

tion in this respect and that we deal with the matter in the abstract. It invites us to look at the commission's reports in these cases; to observe that each upon its face fails to measure up to standard; to send the cases back with general instructions that adequate reports be made.

This course we reject. If there be inadequacies in a particular report, they must be specified by objection to the report. If any case is to be remanded for correction of error in this area, it must be with instructions that by report or finding resolution of some specific dispute be made or some specific inadequacy be remedied. Otherwise, as we view the matter, there could be no end to these litigations.

We shall then in each case examine the record and briefs to ascertain what specific matters are asserted, by objections of the United States, not to have been dealt with adequately.

### LEWIS CASE

This case concerns the condemnation of 118 acres in Tulare County, California, in connection with the Success Dam and Reservoir Project (Public Law 534, 78th Congress, 58 Stat. 887). It was commenced by the filing of a complaint in condemnation by the United States on May 1, 1959. It was referred by the district court to a commission on June 1, 1959, and on July 22, 1960, the finding and report of commission was filed.

The commission found:

"That the property taken by the United States * * * was part of a larger holding by [the appellees] and said larger holding before the taking by the United States consisted of approximately 1,598 acres of land which composed an integrated cattle ranching operation. * * * That the fair market value of the entire parcel of which the portion taken was a part immediately before the taking on May 1, 1959, was $218,400.00. * * * That the fair market value of the remainder on May 1, 1959, immediately after the taking, was $148,400.00. * * *

The commission therefore finds that the just compensation for the taking * * * to be $70,000.00."

Other than this, there is no finding as to highest and best use and no disclosure as to the valuation principles utilized by the commission or the elements of value taken into consideration.

Judgment of the district court approving and adopting the report was entered January 31, 1961.

■ Before turning to the commission's finding and report, one assignment of error requires attention. The United States contends that two of the commissioners should have disqualified themselves for bias by virtue of their prior associations with appellees' expert witnesses. Both commissioners were lawyers who had in their practice on previous occasions used these witnesses. Both volunteered this information when the witnesses were called and both stated for the record that their prior associations would not in any way influence their decisions. The United States in both instances requested that the commissioners disqualify themselves. This they declined to do and their refusal was the subject of one of the government's objections to the report and findings.

These facts of prior association would not as a matter of law constitute implied bias either in the case of a judge or a juror. Nor can it be said that actual bias has been demonstrated beyond reasonable possibility of disagreement. Disqualification was not then called for as a matter of law; nor can it be said that any factual finding other than that actual bias existed was clearly erroneous.

■ The question would seem to relate to an exercise of discretion. Certainly, a rational presumption against bias is far less strong in the case of an ad hoc master than in the case of a judge under tenure; and a district judge, viewing the work of the commission he has appointed, should have the discretionary power to reform his commission where doubt exists as to whether its judgment has been affected by bias.

Yet there are very real practical problems involved in situations such as this. Those qualified to act as valuation commissioners in a particular area are likely to have had prior association with those qualified to act as expert witnesses from that area. A balancing of all considerations and probabilities should be the function of the district court and, in review of its action, the test should be whether abuse appears.

Here, among other relevant considerations, it appears that the witnesses were employed before it was known who were to serve as commissioners. It was not until the hearing that the possibility of conflict appeared. The district court clearly was satisfied with the assurance of lack of bias as given by the commissioners involved. Under the circumstances, we find no abuse of discretion in the failure of the district court to remand the matter for hearing before other commissioners.

We proceed to a consideration of the finding and report of the commission.

Before the commission, the government's witnesses had respectively appraised the property at $38,000.00 and $35,150.00, based upon what they regarded as comparable sales of property. Appellees' principal witness took into consideration a deposit of sand and gravel located upon the property taken. His appraisal was based upon a before-and-after evaluation of the larger parcel, to which the commission referred as an integrated cattle-ranching operation. His land values were based upon the carrying capacity of the land in terms of head of cattle. The government summarized his testimony as follows:

| | | |
|---|---|---|
| Before taking: Value of land ................. | $201,000 | |
| Value of gravel ................ | 92,400 | $293,400 |
| After taking: Value of land ........................... | | 123,000 |
| Damage ............................................. | | $170,400 |

In its objections to the report and finding, the United States protested the valuation principles followed by appellees' witnesses as based on use value and not market value; and that the integrated-operation, before-and-after method was not proper when evidence of comparable sales was available. It protested the manner in which appellees' witnesses had dealt with the matter of the sand and gravel. Before the commission there were disputes as to value (the United States contending that the deposit was of no value whatsoever); and as to the manner in which the value should be appraised. (One of appellees' witnesses, for example, seemed to determine value by ascertaining the going price per ton, multiplying it by the estimated number of tons in the ground and adding this figure to his appraisal of the property for agricultural purposes.)

Problems comparable to those presented here were faced in United States v. Carroll, 4 Cir., 1962, 304 F.2d 300. There the commission had found that the highest and best use of the property taken was "as a horse farm with future investment potential" and that the property contained approximately 150 acres of marketable sod. The court stated, at page 305:

"These questions, however, naturally present themselves: (1) Did the commission, in valuing the land at $325 per acre, consider the sod in place as an element of value to the whole property when put to its highest and best use? (2) Did the commission take into consideration the marketable value of the sod and the possible effect of sod removal on the highest and best use of the whole property? (3) Did the commission, in determining that the highest and best use of the property taken included 'future investment potential,' have in mind the use of the land for the production of marketable sod or the eventual subdivision of the property for residential purposes as testified to by Rouse and other witnesses? (4) Did the commission completely fail to take the sod into consideration in determining land value?

"In view of these manifest uncertainties, we conclude that only the commission can supply the answers to these questions. The District Court could easily have required the commission to amplify, clarify and explain its report and the elements considered by it in arriving at a determination of the value as a whole of the property taken. We are of the opinion that this is now the proper course to be pursued and, to that end, we remand the case to the District Court so that it may direct the commission to reconsider, clarify and correct its report."

For "the guidance of the commission and district judge" the court also noted, at page 306, that "it is not proper to evaluate the property by appraising it for several different uses (e. g., for use as a horse farm and as a sod farm) and by adding the separate 'values' together to arrive at market value * * *." To the same effect, United States v. 158.76 Acres of Land in Townshend, Vermont, 2 Cir., 1962, 298 F.2d 559.

■ In the instant case the objections to the report filed by the United States disclose issues which the commission was called upon to resolve in reaching its value judgment and matters upon which findings must be made or explanation given if the district court is to be able intelligently to review the report and findings and act upon the objections made thereto. The court must know what the highest and best use of the property is and whether and how the gravel deposit has figured in the values found. Specifically, it must know the value which the commission attached to the property as ranching property; the evaluation method by which it found this value; the value, if any, which it attached to the property or to any portion of it by virtue of the gravel deposit; the evaluation method by which it found this value; what, if any, other elements of value were taken into consideration.

In this case the district court is reversed and the matter is remanded with instructions that judgment be vacated and that the case be referred back to the commission for findings or clarification upon the matters mentioned above.

 When such findings or clarification have been made, further hearing should be had in the district court upon the objections heretofore filed. Since an end to litigation must come, however, and since our specification of findings or clarification is based upon the objections as filed and to permit a review upon those objections, no further objections may be filed.

## GILL CASE

This case requires little discussion beyond that of the Lewis case. It presents precisely the same problems and calls for the same disposition.

The case concerns 130 acres of land in Tulare County, taken for use in connection with the Success Dam and Reservoir Project. Action was brought May 14, 1957. A commission was appointed May 12, 1959. On January 26, 1960, the commission filed its findings and report. The commission found:

"That the property taken by the United States in Tract A–104 was part of a larger holding by said Clemmie Gill, said larger holding before the taking by the United States consisted of 507 acres, which was composed of grazing land and river bottom land used as part of a cattle ranching operation. There were no improvements on said property other than fences, corrals, a well and pump.

\*　\*　\*　\*　\*　\*

"That the fair market value of the entire parcel of which the portion taken was a part, immediately before the taking was $65,000.00.

"That the fair market of the remainder, immediately after the taking was $28,450.00.

"The Commission, therefore, finds the just compensation for the taking of Tract A–104 to be $37,-250.00."

The United States objected in part:

"During the course of the trial there were different values placed upon different portions of the property by the respective witnesses, this testimony being admissible even though the property had to be valued as a whole. The report of the Commission failed to recite the extent, if any, to which these breakdowns had been considered in arriving at any part of the award. The report also fails to show the consideration, if any, given to the testimony regarding alleged gravel potential and it is also deficient in that it does not set forth the highest and best use of the property as determined by the Commission, or the severance damage, if any, determined to be a part of the compensation \*　\*　\*."

Judgment of the district court approving and adopting the report was entered February 8, 1961.

For the reasons set forth in our opinion in the Lewis case, this matter must be remanded for similar clarification.

Here, too, the United States contends that one of the commissioners should have disqualified himself because of prior relationship with one of the appellees' witnesses. For the reasons set forth in our opinion in the Lewis case, we find neither error nor abuse of discretion in the action of the district court upon this objection.

In this case the district court is reversed and the matter is remanded with instructions that judgment be vacated and that the case be referred back to the commission for findings or clarification upon the matters hereinbefore specified in the Lewis appeal. As in that case, no further objections may be filed by the United States.

## BENNING and MORRISON CASES

These two cases involve parcels of land of, respectively, 1,022 and 302 acres located in Ventura County in or near

Ojai Valley and taken in connection with the Ventura River Project, known as the "Casitas Dam and Reservoir Project." [2]

Complaints in condemnation were filed (October 10, 1956, in Benning and July 18, 1957, in Morrison). The matters were referred to commissions which after extensive hearing filed reports (on September 23, 1960, in Benning and November 1, 1960, in Morrison). Objections were filed by the United States in each case. Judgments from which the United States has appealed were rendered November 17, 1960, in Benning and December 7, 1960, in Morrison. In Benning compensation was fixed at $500,-000.00; in Morrison, at $438,520.00.

Here, as in the Lewis and Gill cases, the United States objected to the commission's report and findings before the district court as inadequate and makes the same contentions here on appeal. In these cases, unlike the two already discussed, the contentions are without merit.

Here the report and findings meticulously deal with the question of highest and best use. A substantial portion of the property was found to be residential in character: for subdivision or rural estates. A lesser portion was found to be most useful as watershed protection or for cattle grazing. Subsidiary findings dealt with various aspects of residential land values: the locational potentialities of the area with respect to the population centers of Southern California; climate and cultural advantages of the Ojai Valley; topography; water supply and potential development of water resources; highway access; the existence of willing buyers.

■ The objections of the United States in these cases seem to be directed to the fact that the findings and report do not disclose what proof the commission relied on and why the commission chose to believe certain witnesses and accept certain evidence as more credible than other witnesses and other evidence. Findings need not be so comprehensive. They should, as the United States asserts, show "how" material factual disputes relating to value have been resolved. But this requirement relates to a showing of the result—the fact as found—and not to a detailed itemization of the proof relied upon in order to reach that result. We conclude that the findings and report in each case are sufficient.

In these cases and in the V–R Ranch case, next to be discussed, further error is assigned relating to the facts that (1) at the time the United States filed its objections, and (2) later, at the time the district court ruled on them, the United States had not yet secured a transcript of the hearings before the commission and the district court had refused to await the securing of such transcript.

After the commission had filed its report, the United States, in each case, moved for an order extending time for the filing of its objections. The motion (in Benning as typical) states:

"There were 97 days of trial in the above-entitled action and, therefore, it is necessary and essential that a transcript of the proceedings therein be obtained for the use of plaintiff's counsel in preparing said Objections * * *; that said transcript cannot be obtained from the court reporter until December 15, 1960; that considering the great amount (176,300 folio pages) of testimony taken in said proceedings, plaintiff's counsel will reasonably require a minimum of 60 days after the receipt of said transcript from said reporter to examine it and prepare Objections * * *."

2. The owners and appellees (notwithstanding the entitlements, which were borrowed from the more comprehensive district court actions) are, in the Benning case, Frank G. Dunshee, John H. Dunshee and Edward L. Lau. and his wife, Margaret

C. K. Lau; and in the Morrison case, Charlotte F. Dunshee, Frank G. Dunshee, John H. Dunshee, Dorothy R. Battin and Edward F. Lau and his wife, Margaret C. K. Lau.

The district court denied the government's motion and the government contends that this constituted abuse of discretion.

■ We cannot agree. The United States was not entitled to an extension of time to secure a transcript merely to search for error in an effort to avoid a result with which it was displeased. It wholly failed to specify to the district court the uses the transcript would serve in presenting objections which it had in mind. Refusal to grant an extension under these circumstances did not constitute abuse of discretion.

In each case, after denial of its motion for extension of time, the United States filed its objections. In its objections it preserved and renewed its request for an extension of time in order that the transcript might be obtained. The district court in each case, without benefit of transcript, ruled upon the objections adverse to the United States. The United States asserts that this constituted abuse of discretion.

The contentions of the United States in this respect are sweeping in their scope. It is contended that in no case can a district court review the report of a commission without having been supplied with a transcript, since it is the function of the district court to ascertain whether the commission's findings are clearly erroneous and this it cannot do without a transcript.

■ With this position, again, we cannot agree. It is the function of the district court to review the commission's report and findings in the light of objections made to it and to resolve the issues presented by such objections. It certainly need not, sua sponte, conduct its own search for error.

The question is simply whether the objections made by the United States were such that the review of the district court, founded upon such objections, could not intelligently proceed to resolution of the disputes so presented without benefit of transcript. To this question we address ourselves.

■ The problem presented by these cases, in essence, is that the present character of the land, as determined by the commission, is not to be found in its present use. The highest and best use is not found from the past history or present use of these lands but from reasonable future probability in the light of the history of the region in general in its transition from agricultural to residential character.

■ The position of the United States, in brief, is that regional transition is still too remote from these particular lands and their particular location and that these lands are not suitable to partake, as residential land, in such a transitional process. Its specific objections to specific findings all touch upon these general contentions. There is, it reiterates in objection after objection, no evidence that some general finding of regional transition has any application or relevance to the lands in question. The existence of an adequate water supply is disputed. The existence of present willing buyers is likewise disputed.

These basic contentions, in our judgment, and the specific aspects of them with which specific objections deal, could not receive the consideration required without a transcript in order to ascertain whether the judgment of the commission, as to the present transitional status of the lands in question, is clearly erroneous.

■ Nor can we agree with appellees that the United States in effect has waived its right to insist that review should await a transcript through its failure promptly to order one on completion of the hearings and prior to the filing of the commission's report. It is only fair to permit a litigant to determine whether review will be sought before expecting it to incur the very substantial expense which a transcript in such a hearing as this would entail.

Accordingly, in our judgment, the district court's action in ruling upon the objections without awaiting a transcript constituted abuse of discretion.

Transcripts, we are given to understand, are now available.

In these cases the district court is reversed and the matter remanded with instructions that judgment be set aside and that further hearings be conducted upon the objections of the United States as hereinbefore filed.

### V-R RANCH CASE

This case involves 826.06 acres of land in the same area of Ventura County as that involved in Benning and Morrison. As in those two cases, the lands were taken in connection with the Casitas Dam and Reservoir Project. Complaint was filed August 12, 1957. The case was referred to a commission which, following hearings, filed its report March 22, 1961. It found the parcel of land taken to be part of a larger parcel; that the value of the parcel taken was $1,104,-900.00; that severance damage suffered by the remainder of the larger parcel was $58,500.00; that the owners were thus entitled to compensation in the sum of $1,163,400.00.

Here, as in Benning and Morrison, a motion was made by the United States for an extension of time within which to file objections in order that the transcript of the hearing might be secured and examined. The motion was denied. On April 17, 1961, the United States filed its objections to the report. On May 16, 1961, judgment was entered adopting the commission's report.

The issues here are the same as those in Benning and Morrison and require the same disposition. Here, as in those cases and for the same reasons, the attack of the United States upon the adequacy of the commission's report is without merit. Its asserted right to further time for the filing of objections in order that a copy of the transcript might be secured is without merit.

As in Benning and Morrison, however, the action of the district court in proceeding to rule upon the objections of the United States in absence of a transcript constituted abuse of discretion. Here, as in those cases, the issue of whether the land in question was in a state of transition from agricultural to residential character was at the forefront of the inquiry. Here, as in those cases, the objections attacked findings in this area as without support of evidence and as being irrelevant through lack of connection to the area involved.

Therefore, for the reasons heretofore set forth in our opinion in Benning and Morrison, the district court in this case is reversed and the matter remanded with instructions that judgment be set aside and that further hearings be conducted upon the objections of the United States, as hereinbefore filed.