# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-2267, 07-2283 & 07-2308

GUARDIAN PIPELINE, L.L.C.,

*Plaintiff-Appellee*,

*v.*

950.80 ACRES OF LAND, *et al.*,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 4696—**James B. Moran**, *Judge*.

ARGUED APRIL 10, 2008—DECIDED MAY 8, 2008

Before EASTERBROOK, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Guardian Pipeline needed easements to build a natural-gas pipeline that the Federal Energy Regulatory Commission authorized it to construct. What it could not acquire by negotiation, it proposed to take by condemnation under 15 U.S.C. §717f(h). This action covers more than a hundred parcels of land in northeastern Illinois. The district court appointed a commission to receive evidence and propose findings under Fed. R. Civ. P. 71.1. (It was Rule 71A at the time; we cite the current version. No change material to this

litigation has occurred.) The commission delivered a 277-page report, which the district court adopted as its own after *de novo* consideration. 486 F. Supp. 2d 741 (N.D. Ill. 2007). Most owners accepted Guardian's offer or the district court's decision, but three groups of owners have appealed to carry on the fight.

Appellants' principal argument is that Thomas M. Ewert, who served as chairman of the three-member commission, was disqualified under 28 U.S.C. §455. Ewert had been a state judge for 24 years before returning to practice in 2001, and when appointed to head this commission he had been in private life for less than a year. According to appellants, however, Ewert was ineligible to serve because the firm he joined (Spesia, Ayers & Ardaugh) has pipeline companies as clients, and Ewert himself did some work for pipeline companies during the three years of the commission's proceedings (though Ewert did not file an appearance on behalf of a pipeline company in any suit). Appellants contend that anyone in Ewert's position would have been tempted to skew the commission's proceedings in Guardian's favor in order to enhance his prospect of being hired to work for other pipeline companies in the future. That temptation disqualified him under §455(b) for actual conflict, as well as the more general standard of §455(a), appellants insist. They also contend that Ewert's law firm worked for Guardian itself, but the district court found otherwise, 486 F. Supp. 2d at 745–46; we say no more about that subject.

An unstated premise of appellants' position is that §455 applies to commissioners, even though the statute is addressed only to justices and judges of the United States. Other circuits have disagreed about the application of

§455 to special masters and land commissioners. Compare *Morgan v. Kerrigan*, 530 F.2d 401 (1st Cir. 1976) (no), and *Rios v. Enterprise Association Steamfitters*, 860 F.2d 1168 (2d Cir. 1988) (no), with *Jenkins v. Sterlacci*, 849 F.2d 627, 630–32 (D.C. Cir. 1988) (yes), and *United States v. Werner*, 916 F.2d 175 (4th Cir. 1990) (yes). To resolve this conflict the Supreme Court amended Fed. R. Civ. P. 53(a)(2) in 2003 to subject special masters to the requirements of §455—but it left Rule 71.1 alone. It says that commissioners are covered by particular subsections of Rule 53. Those subsections are (c), (d), (e), and (f), which have nothing to do with §455. See Fed. R. Civ. P. 71.1(h)(2)(D), and its predecessor Fed. R. Civ. P. 71A(h). The subsection of Rule 53 that incorporates §455 for masters is not among those to which Rule 71.1 points.

Rule 71.1 treats commissioners more like jurors than like judicial officers. Parties may "examine" commissioners, see Rule 71.1(h)(2)(C) and ask the judge to excuse them for cause. This is consistent with the role commissioners play. Unlike masters, who act as surrogates for a district judge, commissioners hear evidence and make proposals to the court on disputed questions of fact. Judges then make independent decisions. Commissioners are supposed to bring expertise to that task, and they could not do so if the very knowledge and experience that made their views desirable also disqualified them. Nor would it be easy for courts to recruit lawyers to serve on commissions if that foreclosed continued legal practice in fields related to the condemnation proceeding. Since 2003, when the Civil Rules brought masters within §455 while leaving commissioners out, no court has held that §455 supplies the standards for members of commissions in condemnation proceedings.

Let us assume, however, that §455 applies. The parties have not contested this issue, so we lack the benefit of adversarial presentation. The subject may be left for another day, because the district court did not err in concluding that Ewert was eligible to serve.

Neither Ewert nor his law firm has had Guardian as a client, but Ewert and the law firm represent other pipeline operators. Ewert has never filed an appearance on behalf of a pipeline operator in litigation, and the matters on which he represents pipelines are unrelated to land condemnation. According to appellants, however, representation of *any* firm in the industry, on any legal issue (contracts with customers or suppliers, rate filings with the FERC, torts, securities, ERISA, tax, or labor issues), is enough to make Ewert a partisan of *every* firm in the business, on every legal issue. If that's the rule for lawyers who represent pipelines, it must be equally disqualifying for a lawyer to represent any property owner on any issue. And as almost every client owns property and wants to maximize its value . . . .

Appellants rely on §455(b)(1), (b)(4), and (b)(5)(iii). Subsection (b)(1) says that "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding", is disqualifying. Ewert is not alleged to know any fact material to this proceeding or to have had any dealings with Guardian or any of the landowners. So subsection (b)(1) is not remotely applicable. One might as well say that someone who becomes a judge following a career as a prosecutor is disqualified in all criminal cases, not just those on which he worked, because prosecutors are partisans and all partisans favor the causes they have espoused. Likewise Justice Goldberg, who came to the

Supreme Court (via the Department of Labor) from a law firm that represented unions in contests with management, could not have adjudicated a suit in which labor and management disagreed. That is not, however, what §455 provides. Disqualification is case-specific; the statute does not put a whole subject matter out of bounds to a judge with no concrete interest in a particular dispute. A lawyer's role as an advocate in one dispute does not disqualify him from serving as a neutral in another, even if the subject matter overlaps.

Subsection (b)(4) disqualifies a person who "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding". Subsection (b)(5)(iii) is materially identical. Ewert does not own stock in Guardian, and neither he nor any close relative has an ownership interest, direct or indirect, in any of the parcels under (or even near) Guardian's pipeline. According to appellants, Ewert's "interest" is his hope that pipelines will hire him or his law firm in the future if this proceeding ends favorably. No judicial decision or advisory opinion of the Committee on Codes of Conduct reads the word "interest" that broadly. See Federal Judicial Center, *Recusal: Analysis of Case Law* 10–15 (2002).

"Interest" means an investment or other asset whose value depends on the outcome, or some other concrete financial effect (such as how much property tax a judge pays). See *In re Virginia Electric & Power Co.*, 539 F.2d 357, 366–67 (4th Cir. 1976). Extending the word to cover things that might or might not happen in the future would mean that no lawyer, appraiser, or engineer could serve on a commission, because it is always possible

that whichever side prevails later could hire the person who made the decision. One could say the same about any arbitrator, or indeed any judge (for federal judges may engage in private practice after resignation or retirement). Lawyers frequently serve as arbitrators, even though they practice law in the same field as the arbitration, without being disqualified for partiality. See, e.g., *Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, 307 F.3d 617 (7th Cir. 2002). The expertise accumulated during practice may be why they are chosen to serve as arbitrators; the same is true for commissioners.

This leads appellants to invoke §455(a), the catch-all section dealing with appearance of impropriety. We need not decide whether a fully informed person would find a problem using the objective standard that applies under §455(a), see *Liteky v. United States*, 510 U.S. 540 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), because the owners did not raise this subject until after the commission had made its decision. *United States v. Balistrieri*, 779 F.2d 1191, 1204–05 (7th Cir. 1985), holds that arguments under §455(a) must be presented early in the proceeding; a problem of appearances is not a reason to set aside a decision that was unaffected by any actual bias. See also, e.g., *United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir. 1985). Appellants say that their delay is justifiable because Ewert did not spontaneously reveal his law firm's book of business, but then he did not have a duty to do so. Rule 71.1(h)(2)(C) provides that litigants may examine a proposed commissioner at the outset; a litigant who lets this opportunity pass, then looks up the commissioners in Martindale-Hubbell after the proceedings have concluded, has no one to blame but himself.

One member of this court has argued that *Balistrieri* should be overruled and belated challenges under §455(a) entertained. See *United States v. Boyd*, 208 F.3d 638, 649–52 (7th Cir. 2000) (Ripple, J., dissenting). Appellants have not asked us to reconsider *Balistrieri*—nor would this be a good occasion to do so, not only because it is an open question whether §455 applies, but also because commissioners in condemnation proceedings make recommendations rather than decisions. An Article III judge whose impartiality is beyond question reviewed the commission's recommendation and found its conclusions sound. It would be pointless to empanel another commission to make a fresh recommendation, when the judge has already ruled on the merits. Judges deal with slanted recommendations all the time; lawyers are advocates, to whose advice judges apply critical analysis. Appellants offer no reason to think that the district judge failed to appreciate the significance, if any, of the fact that Ewert's law firm has pipelines as clients.

Most of appellants' remaining arguments concern the district court's treatment of expert testimony. The court had to determine how much the pipeline easements reduced the value of the land, almost all of which is devoted to farming. Guardian paid directly for any immediate loss, such as crops that could not be grown while the fields were dug up. But even after the pipeline had been buried, some valves and access hatches remain above grade and the immediate area cannot be used for crops. What's more, the easement's restriction that no "permanent structure" can be built on top of the pipeline limits the extent to which in future years the parcels can be developed as housing or shopping centers. Appraisers debated how much these easements reduced the value of the parcels.

Appellants say that the pipeline's appraisers did not know enough about the value of other parcels in the vicinity (and Guardian accuses the owners' appraisers of the same shortcoming), that witnesses who opined on technical questions should have been engineers rather than land planners, and so on. The commission (and the district judge) applied the standards of Fed. R. Evid. 702, and we do not see any abuse of discretion. To the extent the witnesses pressed to (if not beyond) the limits of their expertise, the commission (and the district judge) responded by discounting the testimony, whose weaknesses were explored at length. The commission's lengthy report works through the pros and cons of these witnesses and their methods. In a non-jury proceeding, it is hard to fault that approach.

What puzzles us is why both sides were fixated on pairwise comparisons—that is, matching each subject parcel with a supposedly "comparable" parcel that does not have a transmission-corridor easement (whether for oil, gas, or water underground, or rail or electricity above ground), appraising that parcel, and then comparing the appraised value of the "matched" parcel with appraised values of the subject parcel with a pipeline easement. That process is full of problems. No other parcel will be identical to the subject parcel except for its lack of a transmission-corridor easement. Location and other attributes always differ, setting the stage for debate about whether an appropriate comparison has been selected. And even if very similar parcels can be found for comparison, the appraisals are just estimates. Each of these comparisons requires two appraisals: one of the "matched" parcel, and one (informed by the comparison) of the subject parcel with the easement.

A different approach would be to gather data about the actual selling prices of real estate with and without transmission-corridor easements and use these data to determine how much the easement reduces the value of real estate in real transactions. The law of large numbers would make up for the lack of closely matched comparison pairs. How many feet of transmission easement encumbers a parcel is a continuous variable and could be one independent variable in a regression. Daniel L. Rubinfeld, *Reference Guide on Multiple Regression*, in *Reference Manual on Scientific Evidence* 179–227 (Federal Judicial Center 2d ed. 2000), provides a good description. Using real transaction prices reduces the role of guesswork. Although no one suggested such an approach in this proceeding, litigants (and district judges) should keep it in mind for the future, as it has the potential to be faster, less expensive, and more accurate than a parade of witnesses offering estimates that cannot be verified.

Other issues do not require discussion beyond saying that we substantially agree with the district court's conclusions. But we cannot close without expressing disappointment about the lengthy, redundant briefs that appellants have filed. This court entered an order urging appellants to file a single brief and directing them, if that was not practical, to avoid repetition. They chose to file three briefs, which substantially overlapped. Appellant Morrissey filed a brief that devotes 17 pages to questioning Ewert's participation, and appellants Lowell and Marilyn Phillips filed a brief that spends 13 pages on the same topic; the arguments are very similar. The remaining appellants submitted a brief that purports to adopt Morrissey's presentation but adds a further 5 pages on the subject. These appellants devoted 14 pages to con-

testing the experts' qualifications and testimony; Morrissey added 8 more on the subject. Guardian mercifully used only 24 pages to answer all 165 pages in the appellants' three briefs. A future, similar performance will lead the court to strike the briefs and require the filing of new briefs at counsels' personal expense.

AFFIRMED