2013 COA 168

**REGIONAL TRANSPORTATION DISTRICT, a political subdivision of the State of Colorado, Petitioner–Appellant,**

v.

**750 WEST 48TH AVE., LLC, Respondent–Appellee.**

**Court of Appeals No. 12CA2463**

Colorado Court of Appeals, Div. I.

Announced December 5, 2013

---

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, Richard F. Rodriguez, Amanda A. Bradley, Denver, Colorado, for Petitioner–Appellant.

Alderman Bernstein LLC, Jody Harper Alderman, Carrie S. Bernstein, Jessica D. Kosares, Denver, Colorado, for Respondent–Appellee.

Opinion by JUDGE TAUBMAN

¶ 1 In this eminent domain case, petitioner, Regional Transportation District (RTD), appeals the trial court's pretrial and instructional rulings as well as certain evidentiary rulings by a board of commissioners made in the course of determining the amount of just compensation to be paid for property ac-

quired from respondent, 750 West 48th Ave., LLC (Landowner). We affirm.

## I. Background

¶ 2 In April 2011, RTD filed a petition in condemnation and acquired from Landowner property of approximately 1.6 acres for RTD's FasTracks Gold Line light rail project. Subsequently, RTD and Landowner stipulated that RTD would take possession of the property in exchange for a deposit of $1,800,000, to be given to Landowner. The only issue at trial was determining the amount owed to Landowner for the condemned property. Because eminent domain statutes require either a jury or a commission to conduct the valuation trial, Landowner elected to have a commission trial. As a result, the trial court appointed a commission of three freeholders to determine the property's reasonable market value.

¶ 3 Eminent domain proceedings are conducted using a hybrid model where some responsibilities are accorded to the trial court while others are accorded to the commission. Here, RTD appeals both pretrial and instructional rulings by the trial court and certain evidentiary rulings of the commission.

## II. Disqualification of Commissioner

¶ 4 RTD contends that the trial court erred in not disqualifying Kittie Hook as a commissioner because it did not employ the "appearance of impropriety" disqualification standard applicable to judges. We disagree.

### A. Standard of Review

¶ 5 We generally review conclusions of law de novo and findings of fact for abuse of discretion or clear error. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000).

¶ 6 RTD appeals the trial court's legal conclusion and factual findings. First, it contends that the court misinterpreted the statutory standard applicable to disqualification of commissioners in condemnation cases. Second, it argues that Hook should have been disqualified as a commissioner under its interpretation of the statute.

¶ 7 Because this case involves a mixed question of law and fact, we review de novo the trial court's interpretation of the statutory standard and review for abuse of discretion to determine whether the court correctly applied that standard. *Id.; see State Dep't of Highways v. Copper Mountain, Inc.*, 624 P.2d 936, 937 (Colo.App.1981). Under de novo review, we interpret statutes to give effect to the intent of the General Assembly. *Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶ 8, 284 P.3d 42, 43–44. "We look first to the plain language of the statute, giving the language its commonly accepted and understood meaning." *Id.*, 284 P.3d at 44. However, when reviewing the trial court's factual findings, we review for abuse of discretion to determine whether the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 74, 285 P.3d 986, 1008.

### B. Relevant Facts

¶ 8 After the trial court appointed the commission, including Hook, a real estate broker with Cassidy Turley in Denver, the parties conducted voir dire to determine the qualifications and impartiality of the commissioners. After one and a half hours of voir dire, neither party objected to the commissioners. As a result, the appointed commissioners conducted the trial.

¶ 9 Almost six months later but before trial, RTD discovered that two other Cassidy Turley employees had served as expert witnesses against RTD in other unrelated condemnation cases. Accordingly, RTD requested the trial court to disqualify Hook. The court, however, disagreed with RTD's interpretation of the applicable statute and denied the request.

¶ 10 The court applied section 38–1–105(1), C.R.S.2013, which requires the court to disqualify commissioners according to this standard: "If the court determines that any of the proposed commissioners is not disinterested and impartial, the court shall replace such person and appoint another commissioner...." Reading the plain language of the statute, the trial court stated that the applicable standard for disqualifying commissioners was not "an appearance of partiality," but

whether the commissioner was "in fact interested and partial." Accordingly, the court found that Hook's professional relationship with two fellow employees who had testified against RTD did not make her interested or partial.

¶ 11 On appeal, RTD contends that the court erred in appointing Hook as commissioner. It asserts that the court should have subjected Hook to the same disqualification standards as a judge because a division of our court described commissioners as a "combination of civil juror and judge." *Copper Mountain*, 624 P.2d at 937. We disagree.

### C. Analysis

¶ 12 The test for appearance of partiality of a judge is whether a reasonable person, knowing all the relevant facts, would doubt the judge's impartiality. *People v. Schupper*, 124 P.3d 856, 858–59 (Colo.App. 2005), *aff'd*, 157 P.3d 516 (Colo.2007). For example, in *Hammons v. Birket*, 759 P.2d 783, 785 (Colo.App.1988), a division of this court held that the trial judge who served as a part-time judge and part-time lawyer appeared to be biased because the expert witness testifying in the case before him had also testified for his client in another case. The record also showed that the judge relied on the expert's testimony to make factual and legal determinations. *Id.* Similarly, here, a reasonable person could conclude that Hook might appear to disfavor RTD because her coworkers previously had testified against it. Thus, we must determine whether to apply the appearance of impropriety standard.

¶ 13 As stated above, section 38–1–105(1) instructs the trial court to disqualify any proposed commissioner who is "not disinterested and impartial." Under C.R.C.P. 97 and Colorado Code of Judicial Conduct Rule 1.2, however, judges may be disqualified if they "appear" partial. *See Schupper*, 124 P.3d at 858. Accordingly, RTD maintains

that the district court should have disqualified Hook because her two coworkers had testified against RTD. Because Colorado case law does not address whether the test for disqualifying commissioners is "an appearance of impropriety" or "actual interest and partiality," a division of our court in *Copper Mountain*, 624 P.2d at 937, analogized commissioners to civil jurors and judges, and applied the standards applicable to jurors (actual partiality)[1] and judges (appearance of partiality).

¶ 14 We disagree with RTD that *Copper Mountain* governs our analysis. There, the division did not analyze the statute; instead, it applied two possible disqualification standards, concluding that neither warranted disqualification in that case. *Id.*

¶ 15 Unlike the *Copper Mountain* division, we interpret the standard in section 38–1–105(1) and hold that the trial court did not err in appointing Hook.[2] Like the trial court, we look to the plain meaning of the statute and conclude that RTD had to demonstrate that Hook was in fact interested and partial. If the General Assembly had intended to disqualify commissioners based on their "appearance of partiality," the statute could have explicitly stated that standard. *See, e.g., Vigil v. Franklin*, 103 P.3d 322, 330 (Colo. 2004) ("Since the General Assembly is presumed to have knowledge of existing case law, had the General Assembly intended to limit the preemption of landowner liability by retaining the open and obvious danger doctrine, it could have done so.") (internal citation omitted); *see also People v. Drennon*, 860 P.2d 589, 591 (Colo.App.1993) ("If the General Assembly had intended the result reached by the trial court, we must assume that it would have employed statutory terminology which clearly expressed that intent, as it has done under other circumstances.").

¶ 16 Practical considerations also support our conclusion that the General Assembly intended to require actual partiality for disqualifying commissioners. In condemnation

---

1. *See* C.R.C.P. 47(e).

2. Although RTD moved to disqualify Hook approximately six months after conducting voir dire, Landowner does not contend that RTD

should have addressed this conflict sooner. *Cf. State Dep't of Highways v. Mahaffey*, 697 P.2d 773, 777–78 (Colo.App.1984). Thus, we do not address this issue.

cases, a trial court appoints commissioners for a limited time and purpose—to determine the market value of specific property. *See Jagow v. E–470 Pub. Highway Auth.,* 49 P.3d 1151, 1156–57 (Colo.2002). The court relies on their experience and knowledge of the law or real estate to make the appropriate determination of just compensation. Because "[c]ommissioners are supposed to bring expertise [to valuation proceedings], ... they could not do so if the very knowledge and experience that made their views desirable also disqualified them." *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land,* 525 F.3d 554, 556 (7th Cir.2008) (interpreting similar federal statute, which provides for disqualification of judges with personal knowledge or bias, as applied to commissioners in condemnation proceedings). We also recognize that "[t]hose qualified to act as valuation commissioners in a particular area are likely to have had prior association with those qualified to act as expert witnesses from that area." *United States v. Lewis,* 308 F.2d 453, 457 (9th Cir.1962). Therefore, it would be difficult for courts to "recruit lawyers to serve on commissions if [their expertise and affiliation with experts] foreclosed continued legal practice in fields related to ... condemnation proceeding[s]." *Guardian,* 525 F.3d at 556. Accordingly, we conclude that the trial court applied the proper standard.

¶ 17 In applying the actual bias standard, we hold that Hook's affiliation with her colleagues—the experts who testified against RTD—did not make her interested and partial. Neither RTD's voir dire of Hook nor its motion to disqualify her established that she had participated in the prior RTD cases. The other cases in which her colleagues testified were wholly unrelated to the present case, and RTD has failed to show that Hook had a personal interest, financial or otherwise, in the outcome of this valuation trial. *See Schupper,* 157 P.3d at 520 ("Disqualification only is required where the judge performed a role in the case or has personal knowledge of disputed matters arising from his prior employment."). Thus, the trial court did not abuse its discretion in not disqualifying Hook despite her affiliation with the expert witnesses in other cases.

### III. Trial Court's Instruction to Commission on Applicable Law

¶ 18 RTD next contends that the trial court erred in instructing the commission not to consider evidence concerning amenities at the property (Willow Street Property) leased by Landowner's lessee after the condemnation in order to ascertain the value of the property subject to condemnation. We disagree.

### A. Standard of Review

¶ 19 As stated above, we review a court's legal conclusion de novo and its factual findings for abuse of discretion. *455 Co.,* 3 P.3d at 22. Where the trial court instructs a jury on the applicable law, we review de novo to determine whether the instruction correctly states the law. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011). However, we apply the abuse of discretion standard to a trial court's decision to provide a particular instruction on the admissibility of evidence. *Id.* Here, we apply a de novo standard of review to determine whether the trial court had the authority to instruct the commission on the applicable law and whether that instruction was consistent with Colorado law. We also review for abuse of discretion the trial court's decision to exclude evidence of the Willow Street Property.

### B. Relevant Facts

¶ 20 During the trial, the parties examined Jack Rhine, one of the owners of the condemned property. On cross-examination, Rhine testified about the tenant's forced relocation to the Willow Street Property because of RTD's taking. RTD wanted to use this evidence to prove that the commission should not compensate Landowner for the improvements made on the condemned property because the tenant was able to move to a building with inferior size, location, and amenities. Landowner objected to the admission of this evidence, but the commission overruled the objection because it was within the scope of Rhine's direct examination.

¶ 21 After the trial, Landowner renewed before the trial court its objection to the admissibility of the Willow Street Property evidence. It proposed that the court provide the following instruction to the commission: "Evidence regarding real property located at 8510 Willow Street in Commerce City, Colorado is irrelevant and must not be considered in ascertaining the value of the Subject Property." The trial court granted Landowner's request because the evidence was unrelated to the value of the condemned property.

### C. Analysis

¶ 22 RTD's contention presents both legal and factual issues. First, we must determine whether the trial court can overrule an initial determination by commissioners. Second, if it can, we must determine whether the trial court acted within its discretion to overrule the commission's evidentiary ruling.

¶ 23 Section 38–1–101(2)(a), C.R.S.2013, provides broad powers to the court, stating that "[a]ll questions and issues, except the amount of compensation, shall be determined by the court unless all parties interested in the action stipulate and agree that the compensation may be so ascertained by the court." Moreover, section 38–1–105(1), requires the trial court to "instruct [the commissioners] in writing as to the applicable and proper law to be followed by them in arriving at their ascertainment."

¶ 24 Here, the trial court's instruction on the relevancy of evidence concerning the Willow Street Property constituted a legal issue. Because section 38–1–105(1) requires the trial court to instruct the commission on the applicable law, the court properly instructed the commission how to determine the reasonable value of the property. Also, the trial court's expansive power under section 38–1–101(2)(a) supports our conclusion that the trial court had the authority to instruct the commission on the relevance and use of the Willow Street Property evidence.

¶ 25 We also conclude that the court did not abuse its discretion in providing an instruction that excluded the Willow Street Property evidence. Here, the court properly excluded irrelevant evidence that the tenant had relocated to the Willow Street Property. Because the tenant did not own the condemned property, the tenant's relocation to an inferior property had no bearing on the value of the condemned property. As a result, the trial court correctly instructed the commission not to consider evidence of the Willow Street Property.

### IV. Commission's Reversal of the Trial Court's In Limine Ruling

¶ 26 RTD also asserts that the commission erred in reversing the trial court's motion in limine ruling to admit an expert witness's testimony as to the average value of industrial properties under the income approach. We disagree.

### A. Standard of Review

¶ 27 We review a court's evidentiary ruling for abuse of discretion. In *City of Englewood v. Denver Waste Transfer, L.L.C.*, 55 P.3d 191, 195 (Colo.App.2002), a division of our court noted that "the commission appointed by a trial court in an eminent domain proceeding has the authority to make certain evidentiary rulings, and we review such rulings under the same standards applicable to rulings made by a trial court." Accordingly, we review for abuse of discretion the commission's decision to exclude evidence presented by RTD's expert real estate broker, Steven Serenyi.

### B. Facts

¶ 28 In a motion in limine, Landowner asked the trial court to exclude certain evidence that RTD intended to introduce through Serenyi. The court granted the motion in part, but denied the motion insofar as it sought to preclude testimony about the average value of industrial properties under the income approach.

¶ 29 During the trial, Landowner objected to RTD's question to Serenyi regarding the average value of industrial properties using the income approach. Landowner contended that this testimony was unrelated to the value of the condemned property, and therefore, the evidence was irrelevant. RTD, however, contended that the trial court's ruling on the motion in limine was binding and that the

commission could not reverse it. The commission disagreed and excluded Serenyi's testimony on the average value of other industrial properties under the income approach.

¶ 30 On appeal, RTD maintains that even if the trial court's ruling is not binding, only the court had the authority to change its ruling, not the commission. Moreover, RTD argues that the commission could not have overruled the trial court's decision because the parties had not presented new evidence to warrant a change in the court's ruling. Therefore, RTD contends that the commission erred in reversing the trial court's pretrial ruling. We disagree.

### C. Analysis

¶ 31 Our courts have held that a trial court may modify its pretrial rulings. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 266 P.3d 412, 420 (Colo.App.2011) ("[R]ulings made in the course of ongoing proceedings are interlocutory and may be rescinded or modified during those proceedings on proper grounds."); *see also Bruckman v. Pena,* 29 Colo.App. 357, 363, 487 P.2d 566, 569 (1971) (holding that a district court's pretrial order was not "a final ruling on the admissibility of any evidence, but simply prohibited the use of certain evidence without obtaining permission of the court"). Whether a commission may modify the trial court's ruling on a motion in limine in an eminent domain proceeding, however, has not been decided by Colorado's appellate courts.

¶ 32 We recognize that eminent domain proceedings involve a hybrid model in which the statutes allocate certain responsibilities to the court and others to the commissioners. However, sometimes their responsibilities overlap, and the roles of the trial court and commissioners become unclear. As one commentator has recognized, "[i]t is not always easy to determine whether the in limine issue presented is one that the court should resolve preliminarily, or one that the commission should resolve as an evidentiary matter during the course of the valuation trial." Leslie A. Fields, *Colorado Eminent Domain Practice* 84 (2007).

¶ 33 For instance, divisions of this court have held that commissioners are empowered to make evidentiary rulings. *See State Dep't of Highways v. Mahaffey,* 697 P.2d 773, 776 (Colo.App.1984); *see also State Dep't of Highways v. Pigg,* 656 P.2d 46 (Colo.App. 1982); § 38–1–105(2) (the commissioners "shall hear the proofs and allegations of the parties according to the rules of evidence"). At the same time, section 38–1–105(2), C.R.S. 2013, states that the commission may request the court to rule upon the propriety of the proof or objections of the parties. One commentator has observed that "only if the commission seeks the court's assistance is the court to rule upon such issues." Fields, *supra,* at 84 (citing § 38–1–105(2)).

¶ 34 Although section 38–1–101(2)(a) authorizes a commission to ascertain just compensation, it also states, as relevant here, that "[a]ll questions and issues, except the amount of compensation, shall be determined by the court." Because of this hybrid model, "a court may decide to have the commission, rather than the court, rule upon an in limine issue during the valuation proceeding," Fields, *supra,* at 84; *see, e.g., Denver Waste Transfer,* 55 P.3d at 195 (denying petitioner's motion in limine to exclude owner's valuation approach to allow the commission to determine the relevance and use of the evidence); *City of Aurora v. Webb,* 41 Colo.App. 11, 13, 585 P.2d 288, 291 (1978) (denying the city's motion in limine on the admissibility of evidence regarding the reasonable probability of a rezoning change because the commissioners could make the evidentiary decision).

¶ 35 At first glance, sections 38–1–105(2) and 38–1–101(2)(a) might appear to conflict with each other. However, "[s]tatutes should be interpreted, if possible, to harmonize and give meaning to other potentially conflicting statutes." *People v. Becker,* 55 P.3d 246, 250 (Colo.App.2002).

¶ 36 Here, we harmonize the statutes by reading their plain language. First, section 38–1–105(2) states that the commissioners may request the trial court to rule on the propriety of the evidence, but it does not state that the commissioners must do so. The General Assembly's apparent intent in enacting this statute was to allow the com-

mission to seek the court's clarification with regard to evidentiary issues. Second, although section 38–1–101(2)(a) provides that all questions and issues, except the amount of compensation, shall be determined by the court, this provision may be harmonized with section 38–1–105(2) by concluding that the commissioners must necessarily also have authority to rule on evidentiary objections. Otherwise, the commissioners would not reasonably be able to conduct the trial to determine the amount of compensation.

¶ 37 Although the trial court has certain statutory responsibilities, we conclude that the commissioners can modify the court's determination of a motion in limine after hearing further evidence, especially in the absence of a subsequent trial court ruling. We are unaware of any statute or case law that precludes the commission from reversing the trial court's preliminary rulings.

¶ 38 Additionally, our conclusion is supported by appellate decisions holding that a successor judge may modify or alter a prior judge's rulings based on the discovery of new evidence or facts. *See Sumler v. Dist. Court,* 889 P.2d 50, 54 (Colo.1995) *quot* (a second judge may alter the ruling of a first judge "if '[s]ufficient new facts [are] alleged ... to allow the second judge to enter a different ruling than that of the first judge, in the same manner that judge could have, had he been apprised of the new facts'" (*quoting Jouflas v. Wyatt,* 646 P.2d 946, 947 (Colo. App.1982))); *see also Provo v. Indus. Claim Appeals Office,* 66 P.3d 138, 142 (Colo.App. 2002) ("[A] second judge may modify a prior ruling as necessary if new facts ... or other persuasive circumstances warrant such modification."), *aff'd in part, rev'd in part on other grounds, Dworkin, Chambers & Williams, P.C. v. Provo,* 81 P.3d 1053, 1054– 55 (Colo.2003).

¶ 39 Further, as a practical matter, the trial court cannot rule on every evidentiary objection during a valuation trial without supplanting the role of the commissioners. A trial court's decision on a motion in limine is necessarily preliminary; otherwise, the trial court would be bound by its original ruling even though the parties presented new evidence or facts.

¶ 40 Here, the trial court admitted Serenyi's testimony without hearing the evidence, while the commission excluded Serenyi's testimony after hearing the evidence. Thus, we conclude that the statutes governing eminent domain proceedings do not bind the commission to the trial court's preliminary decision on a motion in limine, but instead, authorize the commission to modify the trial court's ruling, in the same manner the trial court itself could, based on a developed trial record. In so concluding, we determine that case law holding that a trial court may modify its pretrial rulings supports the conclusion that the commission may modify a trial court's ruling on a motion in limine. *See Lombard,* 266 P.3d at 420.

¶ 41 We also hold that the commission did not abuse its discretion in modifying the trial court's ruling regarding Serenyi's testimony. Both the Landowner's and RTD's expert appraisers used only the cost approach to assess the value of the property. Because Serenyi was a rebuttal expert witness, his testimony was limited to the approach used by the parties' expert appraisers—the cost approach. Thus, because Serenyi's proposed testimony using the income approach was outside the scope of the prior expert testimony, the commissioners properly concluded that it was irrelevant.

## V. Attorney Fees

¶ 42 Landowner requests attorney fees incurred in defending this appeal.

¶ 43 Under section 38–1–122(1.5), C.R.S. 2013, a landowner in an eminent domain proceeding is entitled to recover its attorney fees where "the award by the court in the proceedings [e.g., before the commission] equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action." Because that was the case here, the trial court awarded Landowner attorney fees.

¶ 44 C.A.R. 39.5 also provides for an award of appellate attorney fees when there is a legal basis for such an award. Thus, under section 38–1–122(1.5), Landowner may also recover its appellate attorney fees incurred in successfully defending the commis-

sion's just compensation award. *Cf. Wark v. Bd. of Cnty. Comm'rs*, 47 P.3d 711, 717 (Colo. App.2002) (party, who was statutorily entitled to attorney fees when the action against it was dismissed under C.R.C.P. 12(b), and then successfully defended the dismissal order on appeal, was also entitled to appellate fees). Thus, we remand the case to the trial court to determine the reasonable attorney fees incurred by Landowner in connection with RTD's appeal. *See* C.A.R. 39.5 ("In its discretion, the appellate court may remand to the trial court or tribunal below the determination of entitlement to or the amount of any attorney fees).

¶ 45 The judgment is affirmed, and case is remanded for determination of Landowner's reasonable appellate attorney fees.

JUDGE LICHTENSTEIN and JUDGE MILLER concur.