2015 CO 57

**REGIONAL TRANSPORTATION DIS-TRICT, a political subdivision of the State of Colorado, Petitioner,**

v.

**750 WEST 48TH AVE., LLC, Respondent.**

**Supreme Court Case No. 14SC64**

Supreme Court of Colorado.

September 14, 2015

Attorneys for Petitioner: The Law Office of Robert R. Duncan, LLC, Robert R. Duncan, Paul C. Rufien, Andy M. Frohardt, Denver, Colorado

Attorneys for Respondent: Alderman Bernstein LLC, Jody Harper Alderman, Carrie S. Bernstein, Jessica D. Kosares, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 In this case, we examine the interplay between the respective authorities of the supervising judge and the commission to make evidentiary rulings in eminent domain valuation hearings. Specifically, we consider (1) whether a commission may alter a supervising judge's ruling in limine regarding admissibility and (2) whether the supervising judge may instruct the commission to disregard as irrelevant evidence that the commission had previously admitted. We hold that judicial evidentiary rulings control in valuation hearings. Thus, we affirm the court of appeals'

judgment insofar as it approved of the supervising judge instructing the commission to disregard previously admitted evidence as irrelevant and reverse that portion of the court of appeals opinion permitting the commission to alter the judge's evidentiary ruling in limine.

## I. Facts and Procedural History

¶2 In 2011, Regional Transportation District ("RTD") filed a petition in condemnation against 750 West 48th Ave., LLC ("Landowner") to acquire the approximately 1.6-acre property for development of the Gold Line light rail project being constructed between Union Station and Arvada. Landowner was leasing the property to a commercial waterproofing business ("Tenant").[1] Over the years, Landowner had made several luxury improvements to the property, including adding a steam room, a fitness room, an atrium, ceramic and cherry-wood flooring, and marble and granite finishes. The parties stipulated to every condemnation issue except the property's reasonable market value. Landowner elected to litigate the property's value through a commission trial, in which a trial judge appoints three independent freeholders to determine the value of a condemned property under the judge's supervision.

¶3 RTD estimated the reasonable market value of the condemned property at $1,800,000, whereas Landowner proffered a reasonable market value of $2,570,000. While Landowner's calculations focused solely on the cost of replacement, RTD based its estimation on a "superadequacy" theory, asserting that many of the luxury improvements that Landowner had made to the industrial property would not fetch a price on the open market commensurate with their costs of replacement. To bolster this theory, RTD sought to introduce the two pieces of evidence central to this appeal: (1) testimony from expert witness Steve Serenyi regarding alternate approaches to calculating the value, including comparable property values and an income-based approach ("the Serenyi Evidence"); and (2) evidence regarding the val-

---

1. That Landowner and Tenant are both wholly owned by husband and wife Jack and Mary Lou Rhine is irrelevant; both Landowner and Tenant are legally separate corporate entities.

ue of the property at 8510 Willow Street in Commerce City, where the Tenant was forced to relocate ("the Willow Street Evidence").

¶ 4 Before the hearing, Landowner filed a motion in limine with Denver County District Court Judge Ann B. Frick (the supervising judge) seeking to exclude Serenyi's testimony. Judge Frick granted the motion in part, prohibiting Serenyi from testifying regarding his valuation of the property itself under the comparable sales approach because that testimony was not timely disclosed. She denied the remainder of the motion in limine, including the portion of the motion raising a relevancy objection, and specifically ordered that "[t]he remaining aspects of Respondent–Landowner's Motion, including its request to preclude Mr. Serenyi from testifying as to 'average value' and the income approach, is DENIED." Landowner nonetheless objected on relevancy grounds when Mr. Serenyi began testifying before the commission regarding these alternate valuation approaches. RTD insisted that Judge Frick had already ruled on the admissibility, but the commission determined that this prior judicial ruling did not require it to admit the evidence because "motions in limine usually aren't binding." Hence, because it witnessed the attempted introduction of the evidence, the commission felt free to reevaluate the evidence's relevance at that time without consulting Judge Frick. The commission subsequently sustained Landowner's objection and disallowed Serenyi's testimony regarding the average income generated by comparable properties, despite the supervising judge's earlier order denying Landowner's motion in limine to exclude that evidence.

¶ 5 Later in the commission trial, RTD introduced the Willow Street Evidence over Landowner's objection. RTD argued that the absence of luxury amenities at the Willow Street property showed that the condemned property was superadequate because the relocated business did not need the condemned property's luxury improvements in order to operate, indicating that the market would not pay a premium for these luxury improvements. This evidence, RTD contended, ultimately demonstrated that the property's market value was lower than that proffered by Landowner, which was calculated using only the cost-of-replacement approach. Landowner countered that the testimony was misleading and irrelevant because it reflected only that the lessee company did not *require* the improvements in order to operate, and it had no bearing on whether the market in general would pay a premium for the condemned property's luxury improvements. The commission overruled Landowner's objection and admitted the Willow Street Evidence. At the conclusion of the hearing, however, Judge Frick issued an instruction to the commission at Landowner's request that "[e]vidence regarding the [Willow Street property] is irrelevant and must not be considered in ascertaining the value of the subject property."

¶ 6 Therefore, without considering the Serenyi Evidence or the Willow Street Evidence, the commission determined that the fair market value of the property was $2,550,000. The trial court then approved the valuation and granted Landowner's attorney's fees under section 38–1–122(1.5), C.R.S. (2015).[2]

¶ 7 RTD appealed, arguing that the exclusion of the Serenyi Evidence and the Willow Street Evidence constituted reversible error.[3] Regarding the Serenyi Evidence, RTD argued that Judge Frick's ruling on the motion in limine was binding on the commission and could not be overturned by the commission without consulting Judge Frick herself. *See Reg'l Transp. Dist. v. 750 W. 48th Ave., LLC,* 2013 COA 168, ¶ 29, —— P.3d —— (*RTD*). Regarding the Willow Street Evidence, RTD contended that a trial court can-

---

2. Section 38–1–122(1.5) provides that, in condemnation proceedings where the award is greater than ten thousand dollars, the property owner is entitled to reasonable attorney's fees if the award given by the court "equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action."

3. RTD also claimed on appeal that the trial court erred by not disqualifying a commissioner based on an appearance of impropriety. The court of appeals affirmed the trial court's decision, and RTD did not petition for certiorari on that issue.

not overrule initial determinations by commissioners and that, even if it could, Judge Frick abused her discretion in overruling the commission's evidentiary ruling. *See id.* at ¶ 18.

¶ 8 The court of appeals disagreed with RTD and affirmed both evidentiary rulings. *Id.* at ¶ 1. Regarding the Serenyi Evidence, the court held that the commission acted within its authority and did not abuse its discretion when it disallowed Serenyi's testimony, even though the commission effectively overruled the supervising judge's earlier denial of Landowner's motion in limine to block that testimony. *Id.* at ¶ 36. In doing so, the court recognized that whether a commission may modify a trial court's ruling on a motion in limine in an eminent domain proceeding was an issue of first impression. *Id.* at ¶ 30. Initially, the court opined that although "eminent domain proceedings involve a hybrid model in which the statutes allocate certain responsibilities to the court and others to the commissioners[,] ... sometimes their responsibilities overlap, and the roles of the trial court and commissioners become unclear." *Id.* at ¶ 31. The court then noted that commissioners are "empowered to make evidentiary rulings," *id.* at ¶ 32, and successor judges can "modify or alter a prior judge's rulings based on the discovery of new evidence." *Id.* at ¶ 37. On this basis, the court reasoned that a commission trying an eminent domain proceeding is akin to a successor judge, and so the commission has the same authority to modify judicial evidentiary rulings as the supervising judge. *Id.* at ¶¶ 37, 39. Therefore, the court held that "commissioners can modify the court's determination of a motion in limine after hearing further evidence, especially in the absence of a subsequent trial court ruling." *Id.* at ¶ 36.

¶ 9 Regarding Judge Frick's instruction to the commission to disregard the Willow Street Evidence, the court of appeals determined that the judge had the authority to overrule an initial determination by the commissioners and did not abuse her discretion in deeming that evidence inadmissible. *Id.* at ¶¶ 24–25. We granted certiorari to consider both the issue of first impression regarding the Serenyi Evidence and the propriety of the trial court's instruction to disregard the Willow Street Evidence.[4]

## II. Standard of Review

¶ 10 Whether a commission may alter a supervising judge's in limine ruling without consulting the judge and whether a supervising judge may instruct a commission to disregard evidence that the commission previously found to be admissible are questions of law, and we review such questions de novo. *Kazadi v. People*, 2012 CO 73, ¶ 11, 291 P.3d 16, 20.

## III. Analysis

¶ 11 This case affords us the opportunity to clarify the relationship between an eminent domain valuation commission and the judge supervising that commission. We hold that, although a commission is empowered to make evidentiary rulings without consulting the supervising judge, the judge's evidentiary rulings control and are binding on the commission. This remains true whether the judge rules on the evidentiary issue presented before or after the commission considers its admissibility. We therefore reverse the court of appeals' decision to the extent that it permitted the commission to exclude the Serenyi Evidence on relevance grounds, despite the supervising judge's previous ruling denying Landowner's motion in limine to exclude the evidence. We affirm the portion of the decision approving of the instruction that Judge Frick issued to the commission to ignore the Willow Street Evidence as irrelevant, despite the commission previously allowing that evidence to be introduced. Before addressing the specific evidentiary rulings at issue, however, we will first clarify

---

4. Specifically, we granted certiorari to review the following issues:

    1. Whether the court of appeals erred in allowing an eminent domain valuation commission to reverse a trial court's in limine legal ruling and exclude evidence.

    2. Whether the court of appeals erred in ruling that the judge, who did not preside at trial and thus did not hear the evidence, could issue an instruction excluding a specific item of evidence that the eminent domain valuation commission had ruled relevant and admissible.

the proper relationship between the supervising judge and the commission regarding evidentiary rulings in eminent domain valuation hearings.

## A. Judicial Evidentiary Rulings Control

¶ 12 Despite the rather complex relationship between the judge and the commission during eminent domain valuation hearings, the two issues presented in this case quickly resolve themselves by reference to a simple maxim: judicial evidentiary rulings control over commission evidentiary rulings. To explain why this is so, we must first examine the statutory interplay between judge and commission.

¶ 13 When the state or any political subdivision thereof condemns private property so as to put it to public use, it must provide the property owner with just compensation. § 38–1–101(1)(a), C.R.S. (2015). If the state and the landowner are unable to reach an agreement regarding appropriate compensation, then the landowner may choose between a board of commissioners or a jury trial to determine the value of the condemned property. § 38–1–101(2)(a).[5] If the landowner opts for a commission hearing, then the appropriate "compensation shall be ascertained by a board of commissioners of not less than three disinterested and impartial freeholders." *Id.* This board of commissioners is tasked only with determining appropriate compensation under the supervision of a judge, and "[a]ll questions and issues, except the amount of compensation, shall be determined by the court." *Id.* The supervising judge must also issue written instructions to the commissioners regarding their duties at the beginning of the hearing and "at the conclusion of the testimony … as to the applicable and proper law to be followed by them in arriving at their ascertainment." § 38–1–105(1), C.R.S. (2015).

¶ 14 The confusion regarding whether and when the commission is empowered to make its own evidentiary rulings stems from a potential conflict between section 38–1–101(2)(a)'s mandate that the judge make every determination except the end compensa-

tion and section 38–1–105(2)'s statement that the commission "may request the court to make rulings upon the propriety of the proof or objections of the parties." We generally agree with the court of appeals that these two statutes can be harmonized as conjointly (if implicitly) authorizing the commission to make evidentiary rulings, but we part with that court regarding the extent to which the commission is empowered to do so.

¶ 15 Initially, we agree with the court of appeals that commissioners have some implicit power to make evidentiary rulings without the oversight of the trial judge. *RTD*, ¶¶ 32, 35. *See also State Dep't of Highways v. Mahaffey*, 697 P.2d 773, 776 (Colo.App.1984) ("The commissioners are empowered to make their own evidentiary decisions." (citing *State Dep't of Highways v. Pigg*, 656 P.2d 46, 49 (Colo.App.1982))). This power is implied in the statutory language itself—that the commission "may" ask the court to make evidentiary rulings indicates that it is not required to do so—as well as in section 38–1–105(2), which states that commissioners "shall hear the proofs and allegations of the parties according to the rules of evidence." Moreover, some amount of evidentiary authority is pragmatically necessary for a commission to function without constantly interrupting the proceedings to consult with the judge. Thus, if the judge has not ruled on the evidence, then the commission may do so without consulting her.

¶ 16 But the judge is still the judge—she is charged with deciding "[a]ll questions and issues, except the amount of compensation," and the commission must operate within the bounds of the judge's supervisory authority. § 38–1–101(2)(a). Therefore, any implicit power in the commission to decide evidentiary issues is necessarily subsidiary to judicial rulings, and the commission has no power to alter those rulings unilaterally. This remains true even when the judicial rulings are made in limine.

¶ 17 In reaching this conclusion, we reject the court of appeals' likening of the

---

5. As a third option, section 38–1–101(2)(a) permits all interested parties to stipulate that the

judge will determine the amount of compensation.

commission to a "successor judge" for two reasons: first, commissioners need not have any legal knowledge or training and so should not be granted equal footing with the judge regarding legal questions such as the admissibility of evidence; and second, the judge is still on the case and is available to reconsider prior rulings, so there is no judicial entity for the commission to succeed. Therefore, although a commission may rule on evidence if the judge has not already done so, when a judge issues a definitive ruling on the admissibility of evidence—either on a motion or through instructions—the commission is bound to follow the judge's ruling.[6]

¶ 18 Having established this bright-line rule of judicial preeminence, we now apply it to the evidentiary rulings at issue.

### B. The Serenyi Evidence

¶ 19 RTD first contends that the court of appeals erred in affirming the commission's unilateral deviation from Judge Frick's ruling in limine regarding the Serenyi Evidence. We agree. Although a trial judge who is overseeing a commission hearing need not affirmatively grant or deny a motion in limine to exclude evidence, if the judge does issue an explicit ruling, then the commission is bound by that ruling and may not deviate from it. Here, Judge Frick explicitly denied, on relevance grounds, among others, Landowner's motion to exclude Serenyi's expert witness testimony regarding the alternate average-value and income-based approaches to industrial property valuation. The commission nevertheless sustained Landowner's relevance objection at the hearing and deemed the evidence inadmissible without requesting that the judge revisit her previous ruling. In doing so, the commission exceeded its implied authority by contravening the supervising judge's explicit ruling on the motion in limine. Therefore, the commission's deviation from the judge's decision was erroneous. Furthermore, that the ruling was in limine and subject to alteration is of no moment; it certainly could have been

altered on the basis of new information, but only by the supervising judge herself.

¶ 20 Importantly, we do not imply that a judge must rule conclusively on motions in limine regarding the admissibility of evidence. To the contrary, a judge retains broad discretion to decline to rule on an evidentiary motion, thus allowing the commission to rule on the evidence once it becomes apparent during the hearing how that evidence is to be used. *See, e.g., City of Englewood v. Denver Waste Transfer, L.L.C.,* 55 P.3d 191, 195 (Colo.App.2002) (describing a supervising judge's reservation of a motion in limine to exclude testimony, where the judge stated that "it is up to the Commission, basically, to determine how that evidence is to be received and treated, and what weight, if any, is to be accorded"). But that was not the case here—rather, Judge Frick unequivocally ruled that "[t]he remaining aspects of Respondent–Landowner's Motion, including its request to preclude Mr. Serenyi from testifying as to 'average value' and the income approach, is DENIED." In such situations, a commission may not disregard the judicial ruling. If the commission feels that the evidence as presented was inadmissible, then it may request that the judge reevaluate her previous ruling, but the judge need not do so, and the commission remains bound by any judicial rulings.

¶ 21 Because we hold that the commission in this case erred by unilaterally excluding the evidence, we reverse that portion of the court of appeals decision approving of the commission's deviation from the judge's previous evidentiary ruling. We next address the Willow Street Evidence.

### C. The Willow Street Evidence

¶ 22 RTD also contends that the judge lacked the power to instruct the commission at the end of the hearing to disregard the Willow Street Evidence, despite the commission having deeming the evidence relevant and admissible during the hearing. By

---

6. This bright-line rule does not preclude a commission from asking a judge to revisit a previous ruling on the basis of new information. If the commission, after hearing evidence that the judge has deemed admissible in a motion in limine, believes that the evidence is actually irrelevant or otherwise inadmissible, it may explain its reasoning to the judge and request that she revisit her prior ruling. The commission may not, however, overrule the judge's clear directive.

reference to our maxim of judicial control, this line of argument is unsupportable. Section 38–1–101(2)(a) grants the supervising judge broad authority to determine "[a]ll questions and issues, except the amount of compensation," and section 38–1–105(1) expressly requires that "at the conclusion of the testimony, [the judge] shall instruct [the commission] in writing as to the applicable and proper law to be followed by them in arriving at their ascertainment." Here, Judge Frick instructed the commission as follows: "Evidence regarding [the Willow Street property] is irrelevant and must not be considered in ascertaining the value of the subject property." The irrelevance of a particular piece of evidence admitted by the commission is precisely the type of issue within the judge's instructional purview, and Judge Frick acted properly in instructing the commission to disregard evidence that she found to be irrelevant. We therefore affirm that portion of the court of appeals opinion confirming Judge Frick's authority to instruct the commission to disregard the Willow Street Evidence as irrelevant.

## IV. Conclusion

¶ 23 In sum, while eminent domain valuation commissions are free to rule on evidentiary issues if the supervising judge has not yet addressed those issues, judicial evidentiary rulings control. Hence, the commission erred in overturning Judge Frick's order in limine regarding the Serenyi Evidence, and Judge Frick acted properly in instructing the commission to disregard the Willow Street Evidence, which the commission had previously admitted. We therefore reverse the portion of the court of appeals opinion approving of the commission's unilateral evidentiary ruling excluding the Serenyi Evidence, affirm the portion of that opinion approving of Judge Frick's instruction to disregard the Willow Street Evidence, and remand to the court of appeals for further proceedings consistent with this opinion.