23CA1710 Colorado Springs v Serna 09-05-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1710
El Paso County District Court No. 17CV31927
Honorable Eric Bentley, Judge

City of Colorado Springs, Colorado,

Petitioner-Appellee,

v.

Francisco Serna and BirdDog LLC, n/k/a Ajhalei Snoddy,

Respondents-Appellants.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LUM
Brown and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 5, 2024

Wynetta P. Massey, City Attorney, Anne H. Turner, Assistant City Attorney, Colorado Springs, Colorado, for Petitioner-Appellee

Francisco Serna, Pro Se

BirdDog LLC, n/k/a Ajhalei Snoddy, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this condemnation case, respondents, Francisco Serna and Ajhalei Snoddy (owners), appeal the district court's judgment conveying all right, title, and interest in the relevant property to petitioner, the City of Colorado Springs (the City).  We affirm.

## I.    Background

### A.    Condemnation Proceedings

¶ 2    In March 2017, the City identified owners' property as necessary to complete a public transportation and safety improvement project.  The City sent two offer letters to owners in March and May, which owners didn't accept.

¶ 3    After negotiations failed, the City Council unanimously adopted Resolution 66-17, which authorized the City to "take all action necessary" to acquire and seek immediate possession of the property.  The City made a final offer to owners, but they didn't accept, counteroffer, or respond.

¶ 4    In August 2017, the City filed a petition in condemnation to acquire the property in fee simple, served owners with the petition, and moved for immediate possession of the property.  The district court held a contested hearing, after which it granted the City immediate possession.  The City deposited the necessary funds

1

under section 38-1-105(6), C.R.S. 2024, and owners withdrew them.

¶ 5     Later, the City moved for summary judgment as to the value of the property, which the district court granted.  Owners appealed, and a division of this court reversed.  *See City of Colorado Springs v. Serna*, (Colo. App. No. 19CA0856, Aug. 20, 2020) (not published pursuant to C.A.R. 35(e)).  The Colorado Supreme Court denied the City's petition for writ of certiorari.  *See City of Colorado Springs v. Serna*, (Colo. No. 20SC791, Mar. 29, 2021) (unpublished order).

¶ 6     After the case was remanded in 2021, owners filed a motion to dismiss the condemnation action, alleging that the City had not complied with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA), 42 U.S.C. §§ 4601-4655, and that they were owed a comparable dwelling under the URA. The district court denied the motion, reasoning that "[t]he URA does not afford landowners a right to a due process hearing prior to the taking of their property through condemnation" and that the motion was untimely because affirmative defenses are required to be raised earlier in the case.

¶ 7     The case proceeded to a valuation trial in 2023 before a commission of three freeholders.  *See* § 38-1-105.[1]  Serna testified on behalf of both owners, and the City presented testimony from Kyle Wigington, an expert in real property appraisal.  The commission returned a certificate of ascertainment and assessment, which valued the property at $103,203.75.

### B.     Post-Trial Motions

¶ 8     Owners orally moved for a new trial, arguing that they were precluded from introducing exhibits to support their valuation of the property.  They requested two weeks to submit written briefing to support their motion.  The district court set a briefing schedule.

¶ 9     Two weeks later, owners filed a motion under C.R.C.P. 59(a)(3). Instead of raising the preclusion issue, owners argued that the district court was required to amend its October 2017 order granting immediate possession because the City didn't have legal authority to condemn due to deficiencies in Resolution 66-17.

---

[1] "Eminent domain proceedings are conducted using a hybrid model where some responsibilities are accorded to the trial court while others are accorded to the commission." *Reg'l Transp. Dist. v. 750 W. 48th Ave., LLC*, 2013 COA 168, ¶ 3, *aff'd in part and rev'd in part on other grounds*, 2015 CO 57.

¶ 10    The district court construed the motion as one to reconsider the 2017 immediate possession order under C.R.C.P. 121, section 1-15 and found it untimely because such motions must be filed within fourteen days from the date of the challenged order. Moreover, the court held that owners' objections were untimely because they were required to be raised at the immediate possession hearing.[2]

¶ 11    In the two months after trial, owners also filed a "renewed motion to strike" Wigington's testimony and two more post-trial motions under various subsections of Rule 59.  As relevant here, these motions argued that

- Wigington's testimony should be struck because, in response to a complaint raised by owners some months before the valuation trial, the board of real estate appraisers had found that there were reasonable grounds to believe Wigington hadn't followed certain appraisal standards in appraising owners' property;

---

[2] The district court also ruled on some of the substantive arguments raised by owners.

4

- owners were improperly barred from introducing evidence to support their opinion of their property's value at the valuation trial; and

- the district court lacked subject matter jurisdiction due to the deficiencies in Resolution 66-17.

¶ 12    The district court denied all these motions and entered its final rule and order in the matter, conveying all right, title, and interest in the property to the City.

¶ 13    Owners appeal.

## II.    Subject Matter Jurisdiction

¶ 14    Owners first contend that the district court lacked subject matter jurisdiction over the condemnation action.  We disagree.

### A.    Legal Principles

¶ 15    A challenge to the district court's subject matter jurisdiction is an issue that may be raised at any time, including on appeal.  *Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007). The existence of subject matter jurisdiction is a question of law that we review de novo.  *In re J.C.T.*, 176 P.3d 726, 729 (Colo. 2007).

¶ 16    "A court has subject matter jurisdiction where it has been empowered to entertain the type of case before it by the sovereign

from which the court derives its authority." *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011). Thus, the determination of whether a court has subject matter jurisdiction "is generally only dependent on the nature of the claim and the relief sought." *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 58 P.3d 47, 50 (Colo. 2002).

¶ 17    "In Colorado, district courts are courts of general jurisdiction, and have original jurisdiction in 'all civil, probate, and criminal cases, except as otherwise provided' in the constitution." *Wood*, 255 P.3d at 1140 (quoting Colo. Const. art. VI, § 9); *see also State ex rel. Suthers v. Johnson L. Grp., PLLC*, 2014 COA 150, ¶ 16 ("The Colorado Constitution vests district courts with general jurisdiction, giving them original jurisdiction in all civil cases.").

## B.    Analysis

¶ 18    Owners contend that the district court lacked subject matter jurisdiction because (1) Resolution 66-17 was defective, and (2) the

City failed to notify owners of their rights to receive a "comparable replacement dwelling" under the URA.[3]  We disagree.

### 1.     Resolution 66-17

¶ 19     As best we understand them, owners contend that because Resolution 66-17 is defective, the City did not have authority to condemn the property.  And because the City lacked authority to condemn the property, the district court lacked subject matter jurisdiction to hear the condemnation proceedings.  We disagree.

¶ 20     As described above, the district court is a court of general jurisdiction.  *See* Colo. Const. art. VI, § 9.  This general jurisdiction includes jurisdiction to preside over condemnation proceedings.  *See* § 38-1-102(1), C.R.S. 2024 (authorizing a condemning authority to file a petition in condemnation with "the judge of the district court where the property or any part thereof is situate").

---

[3] To the extent owners argue that the district court lacked jurisdiction because it improperly conveyed their mineral rights to the City, this argument is unpreserved and is not properly before us.  And, even if it were preserved, this argument is cursory and underdeveloped, so we do not consider it.  *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

¶ 21    Sections 38-1-101 through 38-1-122, C.R.S. 2024, describe, among other things, the court's role in condemnation proceedings. Although these sections restrict the court's role in certain ways — for example, the court doesn't decide the amount of compensation due for the condemned property absent agreement by the parties, § 38-1-101(2)(a) — there is nothing that restricts the court's subject matter jurisdiction to deal with condemnation proceedings generally. *See Minto v. Lambert*, 870 P.2d 572, 575 (Colo. App. 1993) ("[S]ubject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment in that class."). This is the case even if the entity requesting condemnation commits procedural errors. *Id.* (holding that even though engaging in good faith negotiations with a landowner is required before a city can bring petition for condemnation, a city's failure to negotiate in good faith doesn't affect the court's subject matter jurisdiction); § 38-1-105(1) (The "court shall hear proofs and allegations of all parties interested touching the regularity of the proceedings and shall rule upon all objections thereto.").

¶ 22    Likewise, the district court's subject matter jurisdiction isn't affected by the City's purported lack of authority to condemn the property.  In fact, whether an entity has authority to condemn a property is a question the district court *must* answer before ordering possession, and the court expressly did so here.  *See Town of Silverthorne v. Lutz*, 2016 COA 17, ¶ 20 ("In an immediate possession hearing, a district court hears challenges to a public entity's condemnation based on an alleged lack of authority."); *Wassenich v. City & Cnty. of Denver*, 186 P. 533, 536 (Colo. 1919) (a district court must settle the question of whether the petitioner is entitled to condemn the property in advance of possession); *see also Pine Martin Mining Co. v. Empire Zinc Co.*, 11 P.2d 221, 223-24 (Colo. 1932) (whether an act authorizing condemnation proceedings is constitutional is a question for the court).

¶ 23    Accordingly, defects in Resolution 66-17, if any, don't deprive the district court of subject matter jurisdiction.

¶ 24    To the extent owners raise non-jurisdictional challenges to the City's condemnation authority as a result of the alleged defects in Resolution 66-17, we reject these contentions.

¶ 25    Owners assert that the resolution was defective because (1) owners were entitled to, but did not receive, notice of the June 2017 City Council meeting at which the City Council adopted Resolution 66-17; (2) the wrong employee sought eminent domain authority from City Council; and (3) the resolution failed to disclose federal funds that were used in the project design.

¶ 26    Owners' first two claimed defects stem from the City's purported failure to follow the procedures in the City's Procedure Manual for the Acquisition and Disposition of Real Property Interests (acquisition manual).  We note that owners do not provide any authority explaining why failure to follow the manual would invalidate a City Council resolution or deprive the City of condemnation authority.  But assuming, without deciding, that it would, owners' claims still fail.

¶ 27    The notice provision relied on by owners in support of the first defect is found in the City's 2021 acquisition manual.  Colo. Springs, *City of Colorado Springs Procedure Manual for the Acquisition and Disposition of Real Property Interests* § 4.3(k) (Mar. 2021), https://perma.cc/QQV3-G5FH.  But the 2016 acquisition manual, which was the version in effect during the 2017

10

proceedings, doesn't contain any similar provision. Colo. Springs, *City of Colorado Springs Procedure Manual for the Acquisition and Disposition of Real Property Interests* (Mar. 2016), https://perma.cc/W86N-A84G.[4]

¶ 28     For the second purported defect, owners contend that the acquisition manual requires that a "project manager" seek condemnation authority from the City Council, but approval in this case was sought by a contractor who wasn't a project manager. Owners don't cite any provision of the acquisition manual (1) mandating that the project manager, and only the project manager, ask the City Council to authorize condemnation; or (2) saying that the City Council cannot pass a resolution authorizing condemnation if it isn't requested by the project manager.

---

[4] Neither the 2016 nor the 2021 acquisition manual appears in the record, but both parties reference and link to the manuals in their briefing. The parties don't dispute the contents of the website, and the City's website is self-authenticating, so we take judicial notice of both manuals. *See Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*, 2015 COA 84, ¶ 12 n.4; *see also* CRE 201(b) (the contents of a webpage on a specific date and time are not subject to reasonable dispute); CRE 902(5) (a public authority's publications are self-authenticating).

11

¶ 29    As best we can discern, the 2016 acquisition manual says only that the project manager "*may* seek City Council approval for condemnation" if the property owner doesn't sign a possession and use agreement, and "[i]f City Council authorizes condemnation, all statutory procedures will be followed." *Id.* § 4.3(*l*), (m) (emphasis added). This language doesn't preclude the City Council from passing a resolution authorizing condemnation if requested by someone other than a project manager.

¶ 30    As to the third asserted defect — the failure to disclose federal funds — owners provide no legal authority, and we can find none, supporting their position that the resolution was required to disclose federal funding sources or that the failure to do so invalidates the resolution.

¶ 31    Furthermore, even if the resolution was invalidated, owners don't explain, and we can't discern, why an invalid resolution deprives the City of condemnation authority. As a home rule municipality, the City has the authority to exercise eminent domain powers under article XX of the Colorado Constitution. Colo. Const. art. XX, §§ 1, 6; *see also Town of Silverthorne*, ¶ 18. The city charter mirrors the constitution's grant of authority. *See* Colo.

Springs City Charter § 1-20(d). Owners cite no provision of the constitution or the city charter requiring that the City pass a valid resolution to secure its condemnation authority.

¶ 32 Finally, even if owners had a legally persuasive argument as to why the City lacked condemnation authority, they were required to raise that argument at the immediate possession hearing in 2017. *Town of Silverthorne*, ¶ 20 ("In an immediate possession hearing, a district court hears challenges to a public entity's condemnation based on an alleged lack of authority."); § 38-1-109, C.R.S. 2024. We therefore agree with the district court that any challenges to the City's authority were untimely. *See Town of Silverthorne*, ¶ 20; § 38-1-109.

## 2. Notification Under the URA

¶ 33 Owners next argue that the district court lacked subject matter jurisdiction because the City failed to notify them of their rights under the URA. Owners also contend that the district court misconstrued this argument below as an assertion of an affirmative defense to condemnation. Regardless of how the district court construed the claim, we address owners' jurisdictional challenge de novo. *J.C.T.*, 176 P.3d at 729.

¶ 34    The URA was enacted in 1970 to ensure fair compensation and assistance for those whose property was compulsorily acquired for public use through eminent domain, or those who move as a direct result of a project receiving federal funds. *See* 42 U.S.C. § 4621(a)-(c). The URA outlines a variety of relocation benefits that may be available to those affected, such as moving expenses, *id.* § 4622, and replacement housing, *id.* §§ 4623-4624.

¶ 35    Owners and the City dispute whether owners were entitled to receive URA benefits. However, we need not resolve that dispute because even if the City had failed to notify owners of relocation benefits to which they were entitled, we don't see how this would deprive the district court of its jurisdiction to hear condemnation proceedings. Owners rely on *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), and *Brown v. Walker Commercial, Inc.*, 2022 CO 57, to support their argument. But both *Trinity* and *Brown* analyzed the notice provisions of the Colorado Governmental Immunity Act, §§ 24-10-101 to -120, C.R.S. 2024, which are expressly labeled as a "jurisdictional prerequisite." § 24-10-109(1), C.R.S. 2024; *Trinity*, 848 P.2d at 923; *Brown*, ¶ 44.

Owners don't cite, and we can't find, any similar provision in the URA.

¶ 36    For all these reasons, we see no reason for reversal on jurisdictional grounds.

### III.    Preclusion of Owners' Evidence

¶ 37    Owners next contend that the district court erred by entering a trial management order (TMO) precluding them from introducing evidence at trial.  We disagree.

### A.    Additional Facts

¶ 38    On March 17, 2023, twenty days before trial, the City notified the district court that owners had not disclosed their witness and exhibit lists for the proposed TMO, nor had they provided copies of their exhibits as previously directed by the court.  On March 19, the district court ordered owners to disclose their exhibits to the City by March 21, and their witness and exhibit lists for the proposed TMO by March 22.  The order advised owners that, "[a]bsent extraordinary circumstances," they would not be allowed to present any witnesses or exhibits at trial that were not disclosed per the order's instructions.

15

¶ 39 In the proposed TMO, owners provided only a statement that they did not consent to the trial. Owners did not submit a witness or exhibit list and did not disclose exhibits to the City.

¶ 40 On March 24, the district court held a trial management conference. Owners did not appear. The district court issued the TMO, which ordered that, since owners failed to disclose any witnesses or exhibits, they needed to demonstrate good cause or exceptional circumstances for their failure to disclose if they wanted to call any witnesses other than themselves or introduce any exhibits at trial.

¶ 41 At trial, owners attempted to introduce exhibits, but the commission chair excluded the exhibits because owners hadn't demonstrated good cause or exceptional circumstances for why the exhibits weren't disclosed by the deadline.

## B. Analysis

¶ 42 As best we understand them, owners first contend that section 38-1-105(2) prohibits the district court from issuing a TMO placing deadlines on the submission of evidence. However, this section merely states that the commissioners "may request the court to make rulings upon the propriety of the proof." § 38-1-105(2).

16

Contrary to owners' suggestion, this provision does not prohibit the district court from entering a TMO concerning courtroom procedures.

¶ 43    Owners also appear to contend that they weren't required to make pretrial disclosures because portions of the rules of civil procedure don't apply to condemnation proceedings. But even assuming that's the case, nothing in the rules of civil procedure, the condemnation statutes, or the Constitution prohibits a court, in its broad discretion, from ordering a party to timely disclose its witnesses and exhibits or sanctioning the party for failure to comply. Accordingly, we perceive no error in the district court's ruling precluding owners from presenting undisclosed witnesses or exhibits absent good cause.

¶ 44    We also reject owners' arguments based on the Colorado Rules of Evidence. The commissioners were bound by the evidentiary rulings set forth in the district court's TMO. *See Reg'l Transp. Dist.*, ¶ 23 (noting that the commission is bound by judicial evidentiary rulings). The commission chair didn't preclude owners' evidence because it was inadmissible under the evidentiary rules, but

because owners failed to establish good cause for their failure to comply with the TMO's disclosure requirements.

¶ 45    Finally, we note that, even if the court or the commissioners improperly precluded owners from presenting witnesses or evidence, owners don't provide us with any detail about what exhibits or witnesses they would have introduced or how that evidence would have affected the commissioners' ascertainment of value.  Accordingly, we perceive no reversible error.  C.R.C.P. 61. ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

## IV.    The City's Appraiser

¶ 46    Owners next contend that Wigington (the City's appraisal expert) wasn't competent to testify at the commission proceedings because the appraisal "was found to have been deemed unlawful by the board of real estate appraisers."

¶ 47    In support of their argument, owners cite meeting minutes from the Board of Real Estate Appraisers evaluating a complaint owners raised against Wigington some months before trial.  The Board concluded that "reasonable grounds exist[ed] to believe that

violations of appraisal law" occurred, though the minutes do not specify which appraisal standards weren't followed. As best we can discern, the Board recommended that the complaint be dismissed upon Wigington's completion of additional education.

¶ 48 Contrary to owners' suggestion, a violation of professional appraisal standards doesn't render Wigington incompetent to testify as an expert. *See* CRE 702 (setting forth the requirements to qualify an expert). And owners don't set forth any detailed or legally supported argument explaining which standards Wigington violated or why the violations would render his opinion unreliable, irrelevant, or otherwise inadmissible. *People v. Ornelas-Licano*, 2020 COA 62, ¶ 43 (noting that expert testimony is admissible if it is "reliable and relevant").

¶ 49 We therefore perceive no reversible error in the admission of Wigington's testimony.

## V. Disposition

¶ 50 The judgment is affirmed.

JUDGE BROWN and JUDGE BERGER concur.